UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY  DIVISION

| | |
|---|---|
| NGA WEAVER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 4:07-cv-107-SEB-WGH |
| vs. ) | |
| ) | |
| TROOPER JESSE COMBS, and TROOPER ) | |
| TAMI WATSON, ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on the Motion for Summary Judgment [Docket No. 84], filed by Defendants, Jesse Combs and Tami Watson, on October 3, 2008.  Plaintiff, Nga Weaver, brought the present action under Title 42, United States Code § 1983, alleging violations of her rights to be free from excessive force and to be free from unreasonable search and seizure, as well as alleging malicious prosecution and negligence under Indiana law.  Defendants argue that Weaver's claims fail because Defendants had probable cause to arrest her; because they did not use excessive force; because they are entitled to immunity; and because Weaver failed to notify the State of Indiana of her intent to file a claim.  For the reasons detailed in this entry, Defendants' Motion for Summary Judgment is GRANTED.

### *Factual Background*

Plaintiff, Nga Weaver, is a resident of Shelby County, Kentucky. At all times relevant to the present action, Defendants, Jesse Combs and Tami Watson, were Indiana State Troopers stationed out of the Rising Sun, Indiana, post. The patrol area of both troopers included the Grand Victoria Casino in Rising Sun.

On August 13, 2005, at approximately 11:00 p.m., Combs and Watson were contacted by Grand Victoria Casino security regarding an altercation occurring in front of the casino's Grand Theatre. By the time Combs and Watson arrived, the incident had ended, but they remained in the area in case further problems developed. While waiting for a theater event to end, an employee of the casino pointed out Luan Tran, a man the employee believed to have been involved in the prior altercation. Tran was standing with a woman later identified as Nga Weaver.[1]

Shortly thereafter, Combs noticed a commotion in a nearby hallway area. Several patrons were pointing at Tran and asserting that he had started another altercation. Combs intervened in the dispute, identified himself to those present as a state trooper, and asked Tran to follow him to another area of the casino.[2] As Combs was walking with

---

[1] Defendants contend that, at this point, they saw Weaver drinking an alcoholic beverage, and that later Combs perceived her to be intoxicated. Weaver rejoins that she had only two drinks that night and that she was not intoxicated.

[2] According to Lieutenant George Honchell, a security employee at the casino, Combs and Watson were wearing civilian clothing and did not have visible badges. Honchell Dep. at 26:3-21. Weaver asserts that she was not aware at this point that Combs and Watson were police officers.

2

Tran, Weaver advanced quickly towards Combs, yelled at Combs, and attempted to interfere with Combs's apprehension of Tran.[3]  Combs pulled his arm away from Weaver and executed a physical maneuver, on which he had been trained as a law enforcement officer to use, in order to separate her from himself.  As a result of the maneuver, which involved a sharp shove to Weaver's arm, Weaver, who was wearing three-inch high heels, fell to the floor.

Combs told Weaver to get up, but she responded that she could not do so because she had injured her ankle during the fall.  Combs and Watson therefore approached Weaver in order to place her under arrest.  Because Weaver would not stand, the troopers carried her outside the casino.  At this point, Weaver repeatedly resisted the troopers' attempts to handcuff her by pulling her hands away from them.

Outside the casino, Weaver declined the medical treatment of an emergency medical technician ("EMT"), who nonetheless stated that he did not observe any injury to Weaver's ankle.[4]  Weaver was then placed in a squad car and transported to the Ripley County jail.  Weaver went to the hospital the following day, where she was given an ace wrap bandage for an ankle sprain.  After several days, she returned to the doctor, complaining of further pain, so the doctor placed a cast on her leg.

Following these events, in August 2006, Weaver was tried for battery, resisting

---

[3]The parties dispute whether, at this point, Weaver grabbed Combs's wrist (and, separately, whether she left a deep scratch on his wrist, or whether that scratch was caused by something else earlier in the evening).

[4]Defendants assert that, at this point, Weaver also spat on the EMT.

3

law enforcement, disorderly conduct, and public intoxication. A jury found her not guilty on all counts, and judgment was issued in her favor.

## *Legal Analysis*

### *I. Standard of Review*

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See id. at 255. However, neither the "mere existence of some alleged factual dispute between the parties," id. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. Michas v. Health Cost Controls of Illinois, Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.

The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Thus, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enter., Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

## II. Weaver's § 1983 Claim

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Section 1983 is not itself a source of substantive rights; instead, it is a means for vindicating federal rights conferred elsewhere. Graham v.

Connor, 490 U.S. 386, 393-94 (1989). Accordingly, the initial step in any § 1983 action is to identify the specific constitutional right which was allegedly violated. Id. at 394; Kernats v. O'Sullivan, 35 F.3d 1171, 1175 (7th Cir. 1994). Weaver's § 1983 action rests on false arrest and excessive force claims against Combs and Watson. These claims are properly vindicated under § 1983 because they arise out of the Fourth Amendment's prohibition against unreasonable searches and seizures. See Potts v. City of Lafayette, Ind., 121 F.3d 1106 (7th Cir. 1997) (holding that all state issued searches and seizures fall within the scope of the Fourth Amendment).

*A. False Arrest*

Warrantless arrests are unconstitutional unless the arresting officer has probable cause, Washington v. Haupert, 481 F.3d 543, 547 (7th Cir. 2007), which "exists where an officer reasonably believes, in light of the facts and circumstances known to the officer at the time of the arrest, that the suspect had committed or was committing an offense." Shipman v. Hamilton, 520 F.3d 775, 778 (7th Cir. 2008). If the arresting officer does have probable cause, this creates "an absolute defense to a claim of wrongful arrest asserted under section 1983 against police officers." Chelios v. Heavener, 520 F.3d 678, 685 (7th Cir. 2008) (citing Wagner v. Washington County, 493 F.3d 833, 836 (7th Cir. 2007) (per curium); Potts, 121 F.3d at 1113). Mustafa v. City of Chicago, 442 F.3d 544, 547 (7th Cir. 2006). Therefore, the viability of Weaver's false arrest claim depends, to a great extent, on the question of whether Combs and Watson had probable cause to arrest

her.

Courts measure probable cause "not on the facts as an omniscient observer would perceive them, but on the facts as they would have appeared to a reasonable person in the position of the arresting officer - seeing what he saw, hearing what he heard." Kelley v. Myler, 149 F.3d 641, 646 (7th Cir. 1998). In other words, in determining the existence of probable cause, courts must recognize, in certain circumstances, "the need for prompt action and the quality of information available." Maxwell v. City of Indianapolis, 998 F.2d 431, 434 (7th Cir. 1993). In a civil suit for damages, when the question of probable cause for an arrest arises, "it is a proper issue for the jury if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." Id.; see also Rising-Moore v. Wilson, City of Indianapolis, 2005 WL 1607187 (S.D. Ind. 2005) (holding that a genuine factual dispute as to probable cause precluded granting of summary judgment).

Defendants argue that they had probable cause to arrest Weaver for resisting arrest.[5] Under Indiana law, an individual resists law enforcement when that individual

---

[5]Defendants also argue that they had probable cause to arrest Weaver for battery because she allegedly grabbed Combs's wrist. Based upon our review of the evidence, however, genuine doubts remain as to whether Weaver grabbed Combs. Weaver has submitted the testimony of Dung Nguyen, who stated at Weaver's criminal trial that he saw Combs push Weaver but did not see Weaver grab Combs. Crim. Trial Trans. at 89-90. She also offers her own testimony from the criminal trial, but that testimony is full of equivocation and, taken as a whole, suggests that she may, in fact, have touched him. See id. at 105-06. In light of the lack of clarity, we cannot conclude with certainty that probable cause existed for battery. All that is clear is that Weaver approached Combs aggressively and attempted to interfere with his arrest of Tran. However, because Defendants had probable cause to arrest her with resisting law enforcement, probable
(continued...)

"knowingly or intentionally: (1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties." Ind. Code § 35-44-3-3.[6]  According to Defendants, probable cause for resisting arrest existed because Weaver refused Combs's and Watson's commands to submit to handcuffing.  Weaver admitted to resisting the officers in her deposition testimony:

> Q: When the officers were trying to put handcuffs on you right after you fell, were you fighting with them at all . . . ?
> A: I didn't fight them but I wouldn't let them put it on . . . .
> Q: Did you resist their efforts to handcuff you?
> A: Yes . . . .

Dep. of Weaver at 105.  On the facts, as laid out in Weaver's own testimony, probable cause existed to arrest her for resisting law enforcement.  Weaver offers no evidence at all to create a genuine issue as to this material fact.

Under Seventh Circuit law, "[p]robable cause to believe that a person has committed *any* crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause."  Holmes v. Village of Hoffman Estate, 511 F.3d 673, 682 (7th Cir. 2007) (citations omitted). Therefore, although genuine doubt remains as to whether probable cause existed for

---

[5](...continued)
cause for battery is not necessary to foreclose her false arrest claim.

[6]To clarify, Defendants do not argue that Weaver interfered with their activities related to the arrest of Tran.  It is not clear that she knew Combs and Watson were law enforcement officers at the time they began escorting Tran away from the scene of the dispute in the casino hallway.

battery, Defendants are nonetheless entitled to summary judgment on Weaver's false arrest claim because they had probable cause to believe that Weaver committed the crime of resisting law enforcement.[7] This operates as an absolute bar to Weaver's false arrest claim under § 1983. See Chelios, 520 F.3d at 685.

*B. Excessive Force*

Weaver also contends that Combs and Watson used an unreasonable of amount force in arresting her. Specifically, she argues that Combs used excessive force when he shoved her, and that both troopers used excessive force when carrying her from the casino. In order to determine whether the force used was objectively reasonable under the Fourth Amendment, we balance of the nature and quality of the intrusion on Weaver's privacy rights against the government interests at stake. Graham v. Connor, 490 U.S. 386, 396 (1989); Abdullahi v. City of Madison, 423 F.3d 763, 768 (7th Cir. 2005).

The right to use physical coercion "is inherent in making an arrest," Bowden v. Town of Speedway, Indiana, 539 F.Supp.2d 1092, 1106 (S.D. Ind. 2008) (citing Graham, 490 U.S. at 396), and the "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

---

[7]The fact that it remains unclear whether Defendants had probable cause to arrest Weaver for battery is of no moment. Under Indiana law, "a private citizen may not use force in resisting a peaceful arrest by an individual [whom she] knows, or has reason to know, is a police officer performing his duties regardless of whether the arrest in question is lawful or unlawful." Alspach v. State, 755 N.E. 2d 209, 211 (Ind. Ct. App. 2001) (quoting Shoultz v. State, 735 N.E.2d 818, 823 (Ind. Ct. App. 2000)).

hindsight." Tibbs v. City of Chicago, 469 F.3d 661, 665 (7th Cir. 2006) (quoting Graham, 490 U.S. at 394). Thus, the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97. The inquiry is dependent upon the facts of the case, although "[t]he reasonableness of force is a legal issue, as juries do not determine what limits the Constitution places on official conduct." Wasko v. Difilippo, 2007 WL 869211 (N.D. Ind. 2007) (citing Bell v. Irwin, 321 F.3d 637, 640 (7th Cir. 2003)).

In the case at bar, Weaver approached Combs truculently, at the very least yelling at him and attempting to interfere with his apprehension of Tran. Combs pulled away from Weaver and then shoved her, in a way that he had been trained to do, in order to distance Weaver from himself. As a result of that maneuver, Weaver, who was wearing high heels, fell to the ground. We must determine if Combs's "split-second judgment" was reasonable in the context of the situation at hand, in which Combs was escorting a suspected participant in a recent altercation from the scene of a subsequent commotion.

Although Combs's actions were arguably aggressive, and although the reactive maneuver he used apparently led to physical injury to Weaver, we conclude that, even viewed in the light most favorable to Weaver, the actions of Combs were objectively reasonable and therefore did not constitute excessive force in violation of the Fourth Amendment. Combs, when confronted by a potentially threatening and rapidly advancing

10

bystander (Weaver), who had just witnessed the arrest of her friend, made a split-second decision to employ a standard police maneuver to prevent her from interfering with the ongoing arrest or from harming Combs himself or causing the situation to escalate.  See Walker v. Yates, 2007 WL 2688138 (E.D. Okla. 2007).  From the perspective of a reasonable officer under these circumstances, including Combs's interest in securing the scene and in protecting himself from a perceived threat, Combs's actions clearly did not exceed reasonable bounds.  See Fox v. Pittinger, 2005 WL 1712216 at *8-9 (N.D. Ind. 2005) (holding that police officer's "take down" of a suspect who approached him aggressively was not unreasonable force, even though it resulted in broken ribs for the suspect); see also Soellinger v. Fuhrman, 2007 WL 2114287 at *4 (N.D. Ind. 2007); Drake v. Higgins, 1999 WL 462987 at *4-5 (W.D. Va. 1999) (holding that a police officer's "grab and shove" maneuver in response to threatening language and hand motions, was not unreasonable given "the hectic circumstances" of the time in question).

     Defendants' decision to carry Weaver from the casino also was not unreasonable.  She had informed Defendants that she could not stand up, so by lifting her up and carrying her a short distance, the police officers' use of physical coercion was "inherent in making an arrest."  Bowden, 539 F.Supp.2d at 1106.  Weaver thus cannot succeed on her excessive force claim, and Defendants' Motion for Summary Judgment must therefore be granted as to that claim.  See Celotex, 477 U.S. at 322.

*C. Qualified Immunity*

Defendants also interpose a qualified immunity defense to Weaver's federal claims, as an alternative basis for summary judgment. The doctrine of qualified immunity protects government officials from liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights reasonably knowable at the time of the conduct. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Because qualified immunity is an *immunity from suit* rather than a mere defense to liability, it is properly assessed at the summary judgment stage. See Purtell v. Mason, 527 F.3d 615, 621 (7th Cir. 2008).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court established a two-step method for determining qualified immunity. Under Saucier, courts must first decide whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right. If the plaintiff satisfies this first step, the court next decides whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. Recently, the Supreme Court reconsidered the heretofore mandatory sequence of this analytical method, concluding that, although the Saucier sequence is often appropriate, a court may exercise discretion in deciding which prong of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case. Pearson v. Callahan, 129 S.Ct. 808 (2009). In the case at bar, we shall address the qualified immunity question in the standard Saucier order.

As previously determined, Defendants did not use excessive force either in

shoving or arresting Weaver. Therefore, Weaver has failed to make out a violation of her Fourth Amendment rights. Because Weaver has not satisfied this step, Defendants are entitled to qualified immunity. See Pearson, 129 S.Ct. at 821.

Assuming *arguendo* that Defendants did use excessive force to a degree that violated Weaver's constitutional rights, Weaver also fails on the second prong of the immunity analysis. The inquiry as to whether Defendants violated a constitutional right that was "clearly established" at the time of the alleged misconduct "must be undertaken in light of the specific context of the case, not as a broad general proposition." Purtell, 527 F.3d at 621. Thus, with regard to Weaver's claim that Combs's shove of her constituted excessive force, although the right to be free from excessive force was clearly established, the right to be free from a responsive police maneuver like the one Combs used in the context of the tense and escalating circumstances was not. Combs responded to a potential threat from Weaver, which occurred in the midst of an admittedly hectic situation. In addition, when Combs and Watson carried Weaver from the casino, they did so because she herself had told them that she could not stand up. Nothing in their decision to lift her up and carry her, or in the manner in which they carried her, can seem to have violated her clearly established constitutional rights.

Although the parties' arguments relating to qualified immunity focus on the excessive force claim, we note additionally that Defendants are entitled to qualified immunity on Weaver's false arrest claim as well. Defendants had probable cause to arrest her for at least one criminal offense, to wit, resisting law enforcement. Therefore, in

arresting her, they did not violate her constitutional right to be free from unlawful seizure.

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Defendants' actions, in arresting Weaver and in the force they used to carry out the arrest, were not those of incompetent officers, nor is there any evidence of their having committed a knowing violation of the law. Because Defendants' conduct was reasonable, they are entitled to qualified immunity, and this determination serves as an alternative ground for granting Defendants' Motion for Summary Judgment as to Weaver's false arrest and excessive force claims.

*D.  Plaintiff's Malicious Prosecution Claim*

Weaver also has brought a claim for malicious prosecution, which is analyzed under Indiana law. Newsome v. McCabe, 256 F.3d 747, 751 (7th Cir. 2008) ("[W]e have recognized that [Albright v. Oliver, 510 U.S. 266 (1994)] scotches any constitutional tort of malicious prosecution when state courts are open."). In order to establish that she was subjected to malicious prosecution, Weaver must show that Defendants "instituted or caused to be instituted a prosecution against [her], that [Defendants] acted maliciously in doing so, that the prosecution was instituted *without probable cause*, and that the prosecution terminated in [her] favor." Conwell v. Beatty, 667 N.E.2d 768, 778 (Ind.Ct.App. 1996) (emphasis added). Weaver fails here by her inability to satisfy an essential element of this malicious prosecution standard because Defendants had probable

cause to arrest her for resisting arrest.[8]  Thus, she cannot as a matter of law succeed on a malicious prosecution claim, and Defendants' Motion for Summary Judgment must be granted as to this claim as well.  See Celotex, 477 U.S. at 322.

*E.  Plaintiff's Claims Under the Indiana Tort Claims Act*

In their Motion for Summary Judgment, Defendants also argue that Weaver's negligence claims under the Indiana Tort Claims Act ("Act") are barred because she has failed to comply with the procedural requirements of the Act.  Under the Act, claims filed against the state are barred unless notice of the intent to bring a claim is filed with the state attorney general or the applicable state agency within two hundred and seventy days of the incident giving rise to the suit.  Ind. Code § 34-13-3-6.[9]

A plaintiff must file such notice for a variety of reasons, but principally to alert state defendants of incidents in a timely manner, so that claims can be investigated and assessed, and possible defenses can be prepared.  Madden v. Erie Ins. Group, 634 N.E. 791, 793 (Ind.Ct.App. 1994).  Notice is sufficient if it substantially complies with the Act notice provisions.  Orndoff v. New Albany Housing Authority, 843 N.E.2d 592 (Ind.Ct.App. 2006).  However, the Act is clear that the notice provided by the plaintiff

---

[8]Weaver does not contend that probable cause was dispelled between her arrest and her subsequent prosecution.

[9]Weaver also seeks damages by claiming that her rights under the Indiana Constitution have been violated.  However, no private right for damages exists under the Indiana Constitution.  See Smith v. Indiana Department of Correction, 871 N.E.2d 975, 985-86 (Ind.Ct.App. 2007).

must be in writing and must be delivered in person or by registered or certified mail. Ind. Code § 34–13-3-12.

Weaver did not file any such formal notice with the state indicating her intention to bring the present action. She argues that, because she informed her arresting officers of her intention to file suit, the state was on "actual imputed notice." Pl.'s Response at 15. According to Weaver, when these officers filed their Indiana State Police Case Report, which documented her asserted intention to sue, the state was put on notice.

Weaver's oral statement to the arresting officers that she intended to sue them is too informal and too attenuated to comply with the notice provisions of the Act. The fact that the officers' written police report noted her statement does not transform her remark into the filing of notice by Weaver herself. Because Weaver did not provide notice in writing to the appropriate state agency within the statutory time period, she is procedurally barred under the provisions of the Act from pursuing her state tort claims.

## F. Immunity Under the Indiana Tort Claims Act

Assuming *arguendo* that the state was put on notice of Weaver's intention to sue when she informed the police officers of that intention, her claims are nonetheless barred because Defendants are entitled to immunity from suit under the Act. The Act provides that a "lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against an employee personally." Ind. Code § 34-13-3-5(b).

16

As Weaver points out, the Act does not necessarily immunize police officers from liability for state claims related to excessive force. Kemezy v. Peters, 622 N.E.2d 1296, 1297 (Ind. 1993) (holding that police officers owe a private duty to refrain from using excessive force when they are making arrests.). Furthermore, the Act explicitly exempts from immunity defendants who engaged in false arrest:

> A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from . . . [t]he adoption and enforcement of or failure to adopt or enforce a law . . . , unless the act of enforcement constitutes false arrest or false imprisonment.

Ind. Code § 34-13-3-3.

According to Weaver, "Defendants Combs and Watson do not have immunity under the Act because they acted unreasonably under the circumstances." Pl.'s Response at 15-16. But, as we have already concluded, Defendants had probable cause to arrest Weaver. Furthermore, Combs's maneuver that resulted in Weaver's fall we have determined was reasonable under the circumstances, as was Combs's and Watson's decision to carry Weaver out of the casino. Weaver had informed them that she could not stand, and they had probable cause to arrest her, so it was reasonable for them to remove her from the casino to effect her arrest. Thus, because Defendants did not use excessive force and their actions did not constitute "false arrest or false imprisonment," they are entitled to immunity from suit in their individual capacities under the Indiana Tort Claims Act.

*G. Sovereign Immunity*

Defendants finally contend that the doctrine of sovereign immunity bars Weaver from suing them in their official capacities. The Eleventh Amendment grants sovereign immunity to the States, a protection grounded in principles of federalism and state autonomy. Alden v. Maine, 527 U.S. 706, 709 (1999). Under the doctrine of sovereign immunity, States may not be sued unless they have waived the immunity or Congress has expressly abrogated the immunity. See Green v. Mansour, 474 U.S. 63, 68 (1985).

The Indiana State Police is an agency of the State of Indiana. Endres v. Indiana State Police, 349 F.3d 922, 927 (7th Cir. 2003) ("The Indiana State Police, as a unit of state government, is not a "person" as § 1983 uses the term and therefore is not amenable to a suit for damages under the statute."). Furthermore, a claim against an employee of the state police in that employee's official capacity is a claim against the State. Will v. Michigan Dept. of State of Police, 491 U.S. 58 (1989); see also Rangel v. Reynolds, 2009 WL 975158 at *5 (N.D.Ind. 2009) (holding that employees, like directors, of state agencies are not "persons" subject to liability under § 1983). Indiana has not waived immunity from § 1983 claims against state police employees, nor has Congress abrogated this immunity. Therefore, insofar as Weaver brings claims against Combs and Watson in their official capacities, those claims are barred by sovereign immunity.

*III. Conclusion*

Having fully and carefully considered the parties' arguments, we conclude that

each of Plaintiff's claims is legally barred by the existence of probable cause, by the reasonableness of Defendants' actions, by Weaver's procedural default, and by the immunity from suit shared by Defendants. Accordingly, Defendants' Motion for Summary Judgment is <u>GRANTED</u>. Final Judgment shall issue in accordance with this entry.

IT IS SO ORDERED.

Date: __04/21/2009_____

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Daniel M. Alvarez
DANIEL M. ALVAREZ, PLLC
dmalvarez01@me.com

Donald G. Banta
INDIANA OFFICE OF THE ATTORNEY GENERAL
donald.banta@atg.in.gov

Lawrence E. Barbiere
SCHROEDER MAUNDRELL BARBIERE & POWERS
lbarbiere@smbplaw.com

Jay D. Patton
SCHROEDER MAUNDRELL BARBIERE POWERS
patton@smbplaw.com

John Thomas Roy
TRAVELERS STAFF COUNSEL OFFICE
jroy@travelers.com

Cory Christian Voight
INDIANA OFFICE OF THE ATTORNEY GENERAL
cory.voight@atg.in.gov